**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-cv-60656-ALTMAN**

**DAVID JOHN POSTA**,

    *Petitioner,*

*v.*

**RICKY DIXON, SECRETARY, FLORIDA**
**DEPARTMENT OF CORRECTIONS**,

    *Respondent.*

_____/

**ORDER**

The Petitioner, David John Posta, pled guilty in state court to several charges arising from a DUI manslaughter in Broward County, Florida. He's now filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his state-court conviction and sentence. *See* Petition [ECF No. 1]. After careful review, we **DISMISS in part** and **DENY in part** Ground One and **DISMISS** the remaining grounds for relief.

**THE FACTS**

On May 4, 2018, while driving his white Ford F-150 pickup truck, Posta "struck and killed Tina Cagnana, who was walking in the bicycle lane with her 16-year old daughter[.]" State's Sentencing Memorandum [ECF No. 19-1] at 39. Posta fled the scene, but "several vehicle parts from the truck" were left behind at the scene, allowing investigators to "determine[ ] the vehicle [that struck Tina] was a Ford F-150." *Id.* at 40. Several hours later, around 2:20 AM on May 5, 2018, a Broward County Sheriff's Office deputy observed a white Ford F-150 with "heavy damage to the right front passenger side" in the parking lot of a 7-Eleven convenience store. *Id.* at 42. The deputy observed an obviously impaired Posta behind the wheel, who admitted that he had "hit something" earlier that night. *Ibid.* Investigators with the Broward County Sheriff's Office "positively determined that the Defendant's

vehicle struck and killed Tina" after matching vehicle parts left behind at the accident scene with Posta's Ford F-150. *Ibid.*

The State's Amended Information charged Posta with five counts: DUI manslaughter (Count 1); leaving the scene of an accident that resulted in death (Count 2); possession of cannabis (Count 3); possession of drug paraphernalia (Count 4); and DUI causing property damage (Count 5). *See* Amended Information [ECF No. 19-1] at 36–37.[1] At some point—the record isn't exactly clear when—Posta pled guilty without a plea agreement (otherwise known as an "open plea"). *See Collins v. State*, 282 So. 3d 887, 887 n.1 (Fla. 3d DCA 2019) ("An open plea occurs when a criminal defendant pleads to a crime without having negotiated a plea deal with the prosecution."). Before sentencing, both the State and Posta filed sentencing memoranda with the court. The State recommended "a total prison term of 35 years to be followed by a total supervision period of 14 years." State's Sentencing Memorandum [ECF No. 19-1] at 64. Posta's lawyer, by contrast, asked the trial court to depart down from Posta's lowest permissible sentence of 152.70 months. *See* Motion for Downward Departure [ECF No. 19-1] at 67 ("[T]he Defendant respectfully requests this Honorable Court to downwardly depart from the lowest permissible sentence in this cause."); *see also* Criminal Punishment Code Scoresheet [ECF No. 19-1] at 91 (setting lowest permissible sentence at 152.70 months).

Posta's change-of-plea hearing and sentencing took place on February 27, 2020. Posta (under oath) acknowledged that he was "throwing [himself] at the mercy of the Court" and that the trial court had the discretion *either* to "grant a downward departure" *or* to sentence Posta "all the way up to every last day of the maximum sentence." Sentencing H'rg Tr. [ECF No. 22-1] at 8–9; *see also* Plea Form

---

[1] The State originally charged Posta in two separate cases with two separate charging documents— one for the conduct that took place on May 4, 2018, and one for the DUI-causing-property-damage offense on May 5, 2018. *See* May 4, 2018 Information [ECF No. 19-1] at 18–20; May 5, 2018 Information [ECF No. 19-1] at 31–32. The State filed the Amended Information after the trial court agreed to consolidate Posta's cases. *See* Order Consolidating Cases [ECF No. 19-1] at 35.

[ECF No. 19-1] at 77–80.[2] Persuaded that Posta understood the consequences of his plea—and his potential punishment—the trial court accepted Posta's plea. *See* Sentencing Hr'g Tr. [ECF No. 22-1] at 13–15 ("The Court: Knowing and understanding all of the things that we have just discussed, is it still your wish to give up those rights and to enter this plea? [Posta:] Yes. . . . The Court: All right [sic]. I will find a factual basis to support this plea based upon, again, my own review of the court file, the proffer of the State contained within its sentencing memorandum and the stipulation of counsel."). After hearing the arguments of the parties and the testimony of several witnesses, the trial court sentenced Posta to 40 years in prison. *See* Sentencing Orders [ECF No. 19-1] at 81–89.

Posta appealed his conviction and sentence to the Fourth DCA. *See* Direct Appeal Notice of Appeal [ECF No. 19-1] at 98. Posta's sole argument on appeal was that, at sentencing, the trial court had improperly considered a 2019 DUI conviction from Virginia because Posta hadn't been represented by counsel in that case. *See* Direct Appeal Initial Brief [ECF No. 19-1] at 120 ("[I]t is clear that [Posta] had no counsel and was not even present for the Virginia 2019 conviction that was certainly considered by the Court and urged upon the Court with the rest of the convictions by the prosecutor."). On April 1, 2021, the Fourth DCA summarily affirmed the state trial court in an unwritten opinion. *See Posta v. State*, 315 So. 3d 661, 661 (Fla. 4th DCA 2021).

---

[2] During the sentencing hearing, Posta and his lawyer decided to withdraw their motion for a downward departure and instead asked the trial court to impose the "lowest permissible sentence" under Florida law. *See* Sentencing Hr'g Tr. [ECF No. 22-1] at 15 ("[Defense Counsel]: Respectfully, Judge, after discussing with Mr. Posta, . . . Mr. Posta believes and is begging the Court to consider the lowest possible guidelines permitted by the sentencing [scoresheet] submitted by the State as a suitable sentence."). The trial court then made a finding on the record that, had the motion for downward departure not been withdrawn, he wouldn't have granted the motion anyway because Posta hadn't met the relevant statutory criteria. *See id.* at 16 ("[The Court]: I would also indicate that in my initial review anyway, pending something further that the Defense might be able to present, I do not believe that the factors for [FLA. STAT. §§ 921.0026(2)(i), (2)(j)] would be there.").

3

On July 22, 2021,[3] Posta filed a motion for postconviction relief in state court under FLA. R. CRIM. P. 3.850. *See* Postconviction Motion [ECF No. 19-1] at 166–82. In his Postconviction Motion, Posta advanced four arguments: (1) that the trial court "lacked jurisdiction to impose the judgment and sentence on counts [3, 4, and 5] of the amended information," *id.* at 168; (2) that Posta's plea "was involuntary and unintelligent" because he didn't realize "the maximum penalty he faced was actually forty five (45) years' incarceration as opposed to 48 years incarceration," *id.* at 172; (3) that his "plea was involuntary as he was misadvised of the minimum penalty he could receive if he proceeded to trial," *id.* at 177; and (4) that his sentence was illegal because it was predicated on an "erroneous scoresheet," *id.* at 180. The State filed a Response to the Postconviction Motion, arguing that all of "Defendant's claims are without merit." State's Postconviction Response [ECF No. 19-1] at 191.

On August 24, 2021, the state postconviction court denied Posta's Postconviction Motion "for the reasons contained in the State's response[.]" Order Denying Postconviction Motion [ECF No. 19-1] at 193. Posta filed a motion for rehearing, *see* Motion for Rehearing [ECF No. 19-1] at 194–98, which the state postconviction court also denied, *see* Order Denying Motion for Rehearing [ECF No. 19-1] at 199. Posta appealed the denial of his Postconviction Motion to the Fourth DCA, *see* Postconviction Notice of Appeal [ECF No. 19-1] at 200, which affirmed in an unwritten opinion on May 5, 2022, *see Posta v. State*, 339 So. 3d 346, 346 (Fla. 4th DCA 2022). Posta requested rehearing and a written opinion, *see* Motion for Rehearing/Authored Opinion [ECF No. 19-1] at 230–33, which the Fourth DCA denied, *see* Order Denying Motion for Rehearing/Authored Opinion [ECF No. 19-1] at 235. The Fourth DCA's mandate issued on July 8, 2022. *See* Postconviction Mandate [ECF No. 19-1] at 236. Posta timely filed this federal Petition on March 31, 2023. *See* Petition at 1.

---

[3] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

THE LAW

I.      The Antiterrorism and Effective Death Penalty Act ("AEDPA")

AEDPA instructs district courts to deny any claim that was "adjudicated on the merits" in a state-court proceeding unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011) (summarizing 28 U.S.C. § 2254(d)–(e)). To have "adjudicated [the claim] on the merits," the state court need not have issued any kind of formal opinion or even outlined its reasoning. *Id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Rather, when a state court doesn't articulate its reasons for the denial, the federal court must "'look through' the unexplained decision to the last related state-court decision that does provide a rationale" and "then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "Clearly established Federal law" means "the holdings, as opposed to the dicta, of [the United States Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To be "contrary to clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up).

For "a state court's application of [Supreme Court] precedent" to be "'unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (cleaned up). "[I]t

is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Richter*, 562 U.S. at 101. "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up).

Section 2254(d) similarly prohibits federal judges from reevaluating a state court's factual findings unless those findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To establish that a state court's factual findings were unreasonable, "the petitioner must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.'" *Ward*, 592 F.3d at 1155–56 (quoting 28 U.S.C. § 2254(e)(1)). "[E]ven if a petitioner successfully carries his burden under § 2254(e)(1)—showing by clear and convincing evidence that a particular state-court factual determination was wrong—he does not necessarily meet his burden under § 2254(d)(2): Even if the state court made a clearly erroneous factual determination, that doesn't necessarily mean the state court's 'decision' was 'based on' an 'unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022) (en banc) (quoting 28 U.S.C. § 2254(d)(2)). Indeed, habeas relief is not warranted "even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an unreasonable determination of the facts and isn't based on any such determination." *Ibid.* (cleaned up).

"AEDPA's standard is intentionally difficult to meet." *Woods*, 575 U.S. at 315 (cleaned up). When reviewing state criminal convictions on collateral review, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 316 (cleaned up).

Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any constitutional error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The *Brecht* harmless-error standard requires habeas petitioners to prove that they suffered "actual prejudice." *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012). As the Supreme Court recently explained, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it didn't eliminate *Brecht*'s actual-prejudice requirement. *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022). In other words, a habeas petitioner must satisfy *Brecht*, even if AEDPA applies. *See id.* at 1526 ("[O]ur equitable precedents remain applicable 'whether or not' AEDPA applies." (citing *Fry v. Pliler*, 551 U.S. 112, 121 (2007)). In short, a "federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests." *Id.* at 1524 (emphasis in original); *see also Mansfield*, 679 F.3d at 1307 ("[A] habeas petition cannot be successful unless it satisfies both [AEDPA] and *Brecht*.").

## II.     AEDPA's Procedural Requirements

"[A] person in custody pursuant to the judgment of a State court" has one year to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). That one-year period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D). But this limitations defense is waivable. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 655 (11th Cir. 2020) (explaining that the State may express its intent to "waive the limitations bar").

Beyond meeting this one-year window, though, federal habeas petitioners must also *exhaust* their claims by "*properly* present[ing] [them] to the state courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (emphasis in original). Specifically, federal habeas petitioners must "fairly present every issue raised in [their] federal petition to the state's highest court, either on direct appeal or on collateral review." *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (cleaned up). "If a petitioner fail[ed] to 'properly' present his claim to the state court—by exhausting his claim[ ] and complying with the applicable state procedure—prior to bringing his federal habeas claim, then [§ 2254] typically bars [courts] from reviewing the claim." *Ibid.* In other words, where a petitioner has not "*properly* presented his claims to the state courts," the petitioner will have "procedurally defaulted his claims" in federal court. *O'Sullivan*, 526 U.S. at 848.

There are, to be sure, two exceptions to the general rule that a federal court may not consider a procedurally defaulted claim on the merits: "cause and prejudice" and "actual innocence." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) ("[A] federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse

the default. We have recognized a narrow exception to the general rule when the habeas applicant can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense."). A habeas petitioner can establish "cause and prejudice" if (1) "some objective factor external to the defense impeded the effort to raise the claim properly in the state court," and (2) "there is at least a reasonable probability that the result of the proceeding would have been different." *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017). "Actual innocence," on the other hand, "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). The petitioner bears the burden of establishing that one of these exceptions to the procedural-default rule applies. *See Gordon v. Nagle*, 2 F.3d 385, 388 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice."); *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) ("The petitioner must support the actual innocence claim with new reliable evidence[.]" (cleaned up)).

All that said, "[s]tates can waive procedural bar defenses in federal habeas proceedings, including exhaustion." *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) (cleaned up). But "[a] State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, *expressly* waives the requirement." 28 U.S.C. § 2254(b)(3) (emphasis added); *see also McNair v. Campbell*, 416 F.3d 1291, 1304 (11th Cir. 2005) (same).

### III.    Ineffective Assistance of Counsel

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. CONST. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas litigant must

demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88). This same standard applies to alleged errors made by both trial counsel and appellate counsel. *See Farina v. Sec'y, Fla. Dep't of Corr.*, 536 F. App'x 966, 979 (11th Cir. 2013) ("A claim of ineffective assistance of appellate counsel is evaluated under the same standard as for trial counsel.").

To establish the first prong (deficiency), "a petitioner must [show] that *no* competent counsel would have taken the action that his counsel did take[.]" *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc) (emphasis added). So, if "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[,]" counsel could not have performed deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong (prejudice), "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To succeed on this prong, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

## ANALYSIS

In his Petition, Posta asserts five grounds for relief. *First*, he claims that the trial court erred at sentencing when it "unequivocably [sic] utilized [Posta's] Virginia charge that was . . . uncounseled[.]" Petition at 5. *Second*, he alleges that the trial court lacked subject-matter jurisdiction under FLA. STAT. §§ 26.012(2)(d) and 34.01 to adjudicate his misdemeanor offenses (Counts 3–5). *See*

10

*ibid.*; *see also* Memorandum of Law ("Memo.") [ECF No. 1-1] at 7 ("Because the DUI in question is a misdemeanor, and involves a separate victim, occurring miles away in a different city . . . [j]urisdiction [was] vested solely in the County Court."). *Third*, he blames his lawyer for falsely informing him that he was facing a "48 year maximum" when "the actual maximum [was] 45 years," a discrepancy that (Posta says) rendered his plea involuntary. Petition at 6. *Fourth*, he insists that his plea was involuntary because counsel misadvised him about the lowest permissible sentence and didn't object when his scoresheet listed an inaccurate lowest permissible sentence. *See* Memo at 9 ("Again, the Petitioner asserts that the plea was involuntary, as the pertinent information in the scoresheet were incorrect, and that he was misadvised as to the minimum penalty he faced if he proceeded to trial." (errors in original)). *Fifth*, he contends that his sentence was illegal because his scoresheet included "incorrect facts." *See* Petition at 7.

## I.     Ground One

In Ground One, Posta claims that the trial court erred because it improperly considered a 2019 DUI conviction from Virginia. Here, Posta says that the trial court should have disregarded the Virginia conviction for two reasons: (1) the Virginia conviction was "uncounseled," and (2) the Virginia conviction wasn't a "prior record" within the meaning of FLA. R. CRIM. P. 3.704(d)(14).[4]

The State parries with three arguments of its own. *One*, it says that Posta has failed to exhaust Ground One because he never "properly raised" it in state court. *See* Response to Order to Show Cause ("Response") [ECF No. 18] at 15–16 ("Petitioner never raised this claim in a Florida court. . . . [Ground One] cannot be considered properly exhausted for review."). *Two*—and in any event—it insists that we lack jurisdiction to consider Ground One because the state court's analysis of FLA. R.

---

[4] FLA. R. CRIM. P. 3.704(d)(14) defines "prior record" as the "convictions for offenses committed by the offender as an adult or juvenile, convictions by federal, out of state, military, or foreign courts and convictions for violations of county or municipal ordinances that incorporate by reference a penalty under state law."

CRIM. P. 3.704(d)(14) "is purely a matter of state law" that cannot be reviewed in a § 2254 proceeding. *Id.* at 16. *Three*, it maintains that the state court's consideration of the 2019 Virginia DUI didn't violate the U.S. Constitution. *See id.* at 18 ("Regardless, any Virginia convictions were not used to 'enhance' Petitioner's sentence within the meaning circumscribed by the United States Supreme Court."). We agree with the State that the second half of Ground One wasn't exhausted in state court *and* isn't cognizable on federal habeas review. We also agree that the first half fails on the merits. We thus deny in part and dismiss in part Ground One.

We'll start by stating the obvious: Posta never raised the second half of Ground One—the argument that the Virginia conviction wasn't a "prior record" within the meaning of FLA. R. CRIM. P. 3.704(d)(14)—in state court. At sentencing, Posta's lawyer objected to the introduction of the 2019 Virginia DUI conviction on the ground that, in that earlier case, Posta wasn't represented by a lawyer and was tried *in absentia*. *See* Sentencing Hr'g Tr. [ECF No. 22-1] at 82 ("[Defense Counsel]: I do take issue with . . . this other DUI up in Virginia. I don't know what happened. But it just seems a little fishy. [Posta] didn't have an attorney, the attorney withdrew. Two months later they find him guilty in absentia. It doesn't appear that there was anybody representing his interests at the time. So I would object to the Court taking that into consideration."). Posta offered this argument again on direct appeal. *See* Direct Appeal Initial Brief [ECF No. 19-1] at 123 ("[T]he Virginia conviction . . . was concededly counsel-less and in absentia at sentencing yet the Court obviously enhanced the sentence [and] considered the remaining constitutionally infirm conviction which, it is submitted, constitutes fundamental error."). But Posta's trial and appellate lawyers *never mentioned* FLA. R. CRIM. P. 3.704(d)(14) and never raised the possibility that the 2019 Virginia DUI conviction didn't meet the Rule's definition of a "prior record." *See generally* Sentencing Hr'g Tr. [ECF No. 22-1]; Direct Appeal Initial Brief [ECF No. 19-1] at 104–25.

Since Posta didn't rely on Rule 3.704(d)(14) in any state-court proceeding—in other words, because he failed "to present the state courts with the same claim he urges upon the federal courts," *McNair*, 416 F.3d at 1302 (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971))—the State asks us to dismiss *all of* Ground One as unexhausted, *see* Response at 16 ("The ground Petitioner raised on direct appeal and [Ground One] raised in this Court are not the same and cannot be considered properly exhausted for review.").

As we've indicated, though, Posta failed to exhaust only *half* of Ground One—and, as we'll soon explain, arguably exhausted the other half. But exhaustion isn't the only problem with the second half of Ground One. The bigger problem is that we cannot, on federal habeas review, second-guess a *state* court's analysis of a *state*-law rule. "[F]ederal habeas corpus relief does not lie for errors of state law. . . . [A] federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). And (it goes without saying) deciding whether the Virginia conviction constitutes a "prior record" under *Florida*'s Rule 3.704(d)(14) is a pure issue of state law. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("Were this Court to undertake a review of the instant petition, we would have to conduct an examination of Florida case law and of the Florida Rules of Criminal Procedure. This we will not and [cannot] do."); *see also Bryant v. McNeil*, 2010 WL 5499423, at *5 (N.D. Fla. Nov. 23, 2010) (Sherrill, Mag. J.) (dismissing claim that the state trial court "violated FLA. R. CRIM. P. 3.704(d)(1)" by considering "prior convictions overlooked on the original scoresheet when [the petitioner] was initially sentenced"), *report and recommendation adopted*, 2011 WL 30306 (N.D. Fla. Jan. 3, 2011) (Paul, J.). We therefore dismiss the second half of Ground One *both* because it's unexhausted *and* because it isn't cognizable on federal habeas review.

The first half of Ground One—that the trial court erred by considering Posta's "uncounseled" Virginia conviction—is only arguably exhausted. We say "arguably" because Posta makes only passing

reference to this issue and focuses (mainly) on the Rule 3.704(d)(14) argument. *See* Petition at 5; Memo. at 4–6; *see also* Response at 15–16 ("Here, Petitioner makes cursory reference to an 'uncounseled misdemeanor' in his headings but strictly relies on Florida law's definition of 'prior conviction' in the body of the argument."). Fortunately, we don't need "to address the issue of [exhaustion], because even assuming the claim is preserved, [Posta] is not entitled to habeas relief," even under a *de novo* standard of review. *Valle v. Sec'y, Dep't of Corr.*, 459 F.3d 1206, 1213 (11th Cir. 2006).

In *Nichols v. United States*, 511 U.S. 738 (1994), the Supreme Court held that "an uncounseled misdemeanor conviction, valid under [*Scott v. Illinois*, 440 U.S. 367 (1979)] because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction." *Id.* at 749.[5] The Court explained that sentencing judges are permitted to "consider[ ] a wide variety of factors in addition to evidence bearing on guilt in determining what sentence to impose on a convicted defendant" and that "a defendant's past criminal behavior, even if no conviction resulted from that behavior," is one such permissible factor. *Id.* at 747 (quoting *Wisconsin v. Mitchell*, 508 U.S. 476, 485 (1993)). The Court therefore found that the only *constitutional limitation* on a sentencing court's discretion to consider prior criminal activity arises when a defendant was deprived of counsel during "criminal proceedings that resulted in imprisonment[.]" *Id.* at 746 (citing *Scott*, 440 U.S. at 372).

The state court in our case was thus constitutionally permitted to consider the Virginia conviction because Posta didn't receive any jail time for that conviction. At Posta's sentencing, the State introduced copies of Posta's certified conviction from the Wythe General District Court in the Commonwealth of Virginia. *See* 2019 Virginia DUI Conviction [ECF No. 21-30] at 21–28. On September 18, 2019, the Virginia court found Posta guilty of three offenses under Virginia law: operating a motor vehicle while having a blood-alcohol concentration of 0.08 percent or more, in

---

[5] In *Scott v. Illinois*, the Court held that "counsel need not be appointed when the defendant is fined for the charged crime, but is not sentenced to a term of imprisonment." *Alabama v. Shelton*, 535 U.S. 654, 657 (2002) (citing *Scott*, 440 U.S. at 373–74).

violation of VA. CODE § 18.2-266(a) (a first-degree misdemeanor); exceeding the speed limit by more than 20 miles per hour, in violation of VA. CODE § 46.2-862 (a first-degree misdemeanor); and refusing to provide a breath test, in violation of VA. CODE. § 18.2-268.3(a) (a civil offense). *See ibid.* The Virginia court fined Posta approximately $2,500 and suspended his driver's license for twelve months, but it didn't impose any jail time. *See ibid.* Posta's constitutional claim thus fails on the merits.

In a last-ditch effort to save this claim, Posta argues (for the first time in his Reply) that the Virginia conviction was *separately* constitutionally infirm because "there is no documentation substantiating that a notice was served 'on the defendant' (regarding either Counsel's withdrawal, or Notice of any hearing)." Reply to the Response to the Order to Show Cause ("Reply") [ECF No. 28] at 6. Two problems with this. *One*, we cannot (and won't) consider arguments Posta advanced for the first time in reply. *See In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not fully presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."). *Two*, Posta never presented this "lack of notice" argument in state court, *see generally* Direct Appeal Initial Brief [ECF No. 19-1] at 116–124, so it's unexhausted and procedurally defaulted, *see McNair*, 416 F.3d at 1302.

Because Posta's Virginia conviction didn't result in imprisonment, the state trial court didn't violate the Constitution by considering it. *See Nichols*, 511 U.S. at 748–49 ("Accordingly we hold, consistent with the Sixth and Fourteenth Amendments of the Constitution, that an uncounseled misdemeanor conviction, valid under *Scott* because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction.").[6] We therefore **DENY** the first half of

---

[6] We recognize that the *Florida Constitution* generally prohibits the State "from using uncounseled misdemeanor convictions to increase or enhance a defendant's [sentence], unless the defendant validly waived his or her right to counsel with regard to those prior convictions." *State v. Kelly*, 999 So. 2d 1029, 1053 (Fla. 2008) (citing FLA. CONST., art. I, § 16). Posta alludes to this rule in his Reply. *See* Reply at 8 ("The NO 'Jail Sentence' argument equally fails . . . as that charge was directly utilized in a Bolstering of Sentencing in this case[.]"). Anticipating this counterargument, the State says that Posta's sentence was not "enhanced" by the 2019 Virginia DUI conviction at all. *See* Response at 19 ("Under

Ground One on the merits and **DISMISS** the second half as unexhausted and not cognizable on collateral review.

## II.     Grounds Two through Five

Posta's remaining claims are all interrelated. In Ground Two, Posta argues that the state trial court lacked subject-matter jurisdiction to adjudicate Counts 3, 4, and 5 of the Amended Information because they were all misdemeanors that "occurr[ed] miles away [from Counts 1 and 2] in a different city, and at least 6 [hours] prior AFTER the alleged hit and run it was a separate incident[.]" Memo at 7 (errors in original). And Grounds Three, Four, and Five all flow from this alleged error in Ground Two. Posta says that his plea was involuntary—and that his trial counsel was ineffective—because he wasn't warned about the maximum or minimum sentences his open plea exposed him to (Grounds Three and Four). And he continues to insist that his sentence was illegal because his scoresheet erroneously calculated the misdemeanors over which the trial court lacked jurisdiction (Ground Five). *See id.* at 8 ("In showing that the Court lacked jurisdiction as in Claim 2, subsequently causing the scoresheet to be incorrect in turn, again caused the plea to be unknowing." (errors in original)). The State contends that all four of these grounds assert "pure matter[s] of state law outside this Court's habeas jurisdiction." Response at 20. We agree.

---

Florida law, a sentence is not 'enhanced' under this definition when the sentence is within the minimum guideline recommendation or the statutory maximum." (citing *Winther v. State*, 812 So. 2d 527, 529 (Fla. 4th DCA 2002))). But we needn't address whether the state court actually "enhanced" Posta's sentence with the 2019 Virginia DUI conviction because this higher state-law standard is irrelevant in a § 2254 proceeding. *See McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992) ("A federal habeas petition may be entertained only on the ground that a petitioner is in custody in violation of the Constitution or laws or treaties of the United States. A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."). All that matters here is whether the state court's consideration of the Virginia DUI offense violated the U.S. Constitution. Whether (and to what extent) it violated the *Florida* Constitution is thus neither here nor there. *See Moore v. Sec'y, Fla. Dep't of Corr.*, 2012 WL 2594330, at *6–7 (M.D. Fla. July 5, 2012) (Howard, J.) ("The federal actual-imprisonment standard is based on *Scott* and [*Nichols*]. . . . Even if the two uncounseled misdemeanor convictions were used to enhance the crime to which Moore pled guilty . . . there is no federal constitutional violation under the express holding of *Nichols*." (parenthetical omitted)).

Florida law has created two sets of criminal trial courts. The state circuit courts have "exclusive original jurisdiction" over "all felonies and of all misdemeanors arising out of the same circumstances as a felony which is also charged[.]" FLA. STAT. § 26.012(2)(d). The county courts, by contrast, have jurisdiction over "all misdemeanor cases not cognizable by the circuit courts." FLA. STAT. § 34.01(1)(a). In Posta's view, the misdemeanors he was charged with in Counts 3 through 5 of the Amended Information *didn't* arise from the same circumstances as the felonies he was charged with in Counts 1 and 2—and, as a result, the state circuit court lacked jurisdiction to sentence him. *See* Memo. at 7 ("Jurisdiction [was] vested solely in the County Court.").

Again, however, Posta cannot advance state-law grievances on federal habeas review. Although the Eleventh Circuit hasn't published an opinion on this question, every federal circuit court that *has* addressed it has held that challenges to a state court's subject-matter jurisdiction under state law don't implicate a federal constitutional right that's cognizable under § 2254. *See Beaulieu v. Minnesota*, 583 F.3d 570, 574 (8th Cir. 2009) ("And we have held that jurisdiction is no exception to the general rule that federal courts will not engage in collateral review of state court decisions based on state law. Whether Minnesota had jurisdiction of his claim was a matter for the Minnesota courts to address." (cleaned up)); *Lambert v. Blackwell*, 387 F.3d 210, 239 (3d Cir. 2004) ("[A] federal habeas court has at most a circumscribed role in reviewing whether a state court properly applied its own law when it explicitly decided to exercise jurisdiction."); *Wright v. Angelone*, 151 F.3d 151, 157–58 (4th Cir. 1998) ("Wright [argues] that the circuit court lacked jurisdiction over the last two counts of his indictment. . . . [But] the Virginia Supreme Court, interpreting its own state laws and case law, concluded that [this argument] had 'no merit.' . . . [E]ven if we were to conclude after an independent review that the state court's holding was incorrect, we are nevertheless bound by it as a final determination of state law by the highest court of the state."); *Lambert v. Workman*, 594 F.3d 1260, 1264 (10th Cir. 2010) ("Lambert argues that the [Oklahoma Court of Criminal Appeals] lacked jurisdiction to abrogate the felony

conviction . . . . The [state court's] understanding of its own authority in the state appellate process is a matter of state law and, as such, generally beyond the purview of federal habeas review."); *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001) ("[A] state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review."); *see also, e.g.*, *Alverson v. Boyd*, 2013 WL 4851682, at *10 (N.D. Ala. Sept. 10, 2013) (Blackburn, J.) ("[T]he question of whether a state criminal court was authorized to exercise subject-matter jurisdiction is primarily an issue of state law for which an error typically does not authorize federal habeas relief."); *Estrada v. Sec'y, Dep't of Corr.*, 2012 WL 1231990, at *1 (M.D. Fla. Apr. 12, 2012) (Moody, J.) ("A state court's jurisdiction to enter a judgment and sentence a defendant is a matter of state law that is not cognizable on federal collateral review.").

Posta argued that the trial court "lacked jurisdiction to adjudicate Counts [3 through 5] of the Amended Information" in his Postconviction Motion. [ECF No. 19-1] at 168. The State filed a Response to the Postconviction Motion, contending that the trial court "had jurisdiction to impose the judgment and sentence for each of the five counts charged in the Information filed in this case because they all arose from a single criminal episode." State's Postconviction Response [ECF No. 19-1] at 187. The state postconviction court denied Posta's claim "for the reasons contained in the State's response," Order Denying Postconviction Motion [ECF No. 19-1] at 193, and the Fourth DCA affirmed without a written opinion, *see Posta*, 339 So. 3d at 346. "We thus presume that both the state postconviction court and the Fourth DCA adopted the arguments the State pressed in those responses." *Cardona v. Dixon*, 2022 WL 2158715, at *6 (S.D. Fla. June 14, 2022) (Altman, J.) (cleaned up). The state courts, in short, have conclusively determined that they had subject-matter jurisdiction over all five of Posta's charges, and we simply cannot second-guess their application of state law. *See*

*McCullough*, 967 F.2d at 535 ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.").[7]

Because Ground Two isn't cognizable in these habeas proceedings, Posta's remaining grounds for relief necessarily fail. Working backwards from Ground Five, since the trial court had subject-matter jurisdiction over all five counts, it properly included Posta's misdemeanor offenses on his sentencing scoresheet.[8] *See* FLA. STAT. § 921.0021(1) ("'Additional offense' means any offense other than the primary offense for which an offender is convicted and which is pending before the court for sentencing at the time of the primary offense."). And, as to Grounds Three and Four, since the scoresheet contained no errors, Posta's lawyer correctly advised him that his maximum sentence was 48 years and that his lowest permissible sentence was 152.70 months.[9] *See* Sentencing Scoresheet [ECF

---

[7] In his Reply, Posta tries to invoke the U.S. Constitution's "Venue Clause," claiming that "jurisdictional matters" always implicate federal habeas jurisdiction. Reply at 8–9; *see also* U.S. CONST. art. III, § 2, cl. 3 ("[Criminal trials] shall be held in the State where the said Crimes shall have been committed[.]"). But the Venue Clause (like the rest of Article III) "do[es] not apply to state courts" because "[s]tate legislatures . . . are always free to adopt [different] requirements than those imposed by Article III on *federal* courts." *Mittenthal v. Fla. Panthers Hockey Club, Ltd.*, 472 F. Supp. 3d 1211, 1225 n.4 (S.D. Fla. 2020) (Altman, J.) (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989)). In any event, there's no dispute that Posta's criminal case was "held in the State where [his] Crimes" were committed," so the Venue Clause is doubly inapposite here.

[8] In any event, "[t]he application of the [Florida] Criminal Punishment Code and sentencing scoresheets is a question of state law. The Eleventh Circuit has consistently held that federal courts cannot review a state's alleged failure to adhere to its own sentencing provisions." *Osbourne v. McNeil*, 2010 WL 3942001, at *5 (S.D. Fla. Sept. 9, 2010) (White, Mag. J.) (citing *Branan*, 861 F.2d at 1508), *report and recommendation adopted*, 2010 WL 3941938 (S.D. Fla. Oct. 7, 2010) (Martinez, J.).

[9] Posta suggests that he never would've entered an open plea if he'd known that he might receive the maximum sentence. *See* Reply at 9 ("Why else would a Defendant openly plea to charges unless there was a benefit. Here the Defendant received no benefit, and did receive the maximum sentence, which was no more than he would have received had he exercised his right to proceed to trial[.]"). But, of course, the trial court *warned* Posta that, if Posta entered an open plea, it could impose the maximum sentence:

> The Court: When you enter a plea open to the Court you're throwing yourself on the mercy of the Court. You have not made a specific agreement with the Office of the State Attorney as to what a fair sentence would be. Instead you're going to leave it entirely to me. Do you understand that?
>
> Posta: Yes.

No. 19-1] at 91. In short, Grounds Two, Three, Four,[10] and Five require us to second-guess the state

postconviction court's finding that the trial court had subject-matter jurisdiction over all five of Posta's

charges. Since we cannot do that, Grounds Two through Five must be **DISMISSED**.

---

> [. . . .]
>
> The Court: You understand that my discretion goes from the bottom [of the guidelines], unless I were to grant a downward departure, *all the way up to every last day of the maximum sentence*. You understand that?
>
> Posta: Yes.
>
> The Court: And you wish to give me complete authority within that discretionary range; is that correct?
>
> Posta: Yes.

Sentencing H'rg Tr. [ECF No. 22-1] at 8–9. Posta swore that he understood this basic point—and, unfortunately, in the world of open pleas, there are no take-backs. *Cf. Lopez v. United States*, 2023 WL 4186414, at *8 (S.D. Fla. June 26, 2023) (Altman, J.) ("Lopez cannot ask us to ignore his [sworn testimony] before pleading guilty. A [habeas petition] is not designed to account for buyer's remorse." (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977))).

[10] Ground Four could (it's true) be read as having nothing to do with subject-matter jurisdiction. In that claim, Posta alleges that his lawyer "misadvised [him that] the minimum penalty he faced" was 152.85 or 152.87 months, when the trial court said that the minimum was actually 152.70 months, and where Posta's scoresheet listed the lowest permissible sentence as 150.70 months. *See* Memo. at 9. Posta now says that this confusion about his minimum sentence rendered his plea involuntary. For two reasons, we disagree. *One*, Posta is just wrong about what his scoresheet said. Both the sentencing judge and the scoresheet agreed that Posta's lowest permissible sentence was 152.70 months—not 150.70 months. *See* Sentencing Scoresheet [ECF No. 19-1] at 91. *Two*—and in any event—Posta's argument is frivolous. A criminal defendant who pleads guilty cannot show that his lawyer's allegedly bad advice prejudiced him unless "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Posta is suggesting that he would've been *less likely* to plead guilty if his lawyer had told him that his lowest permissible sentence was 152.70 months—which is *less* than the 152.85 and 152.87 months he says his lawyer warned him about. *See* Memo. at 9 ("Again, the Petitioner asserted that the plea was involuntary, as the pertinent information in the scoresheet were incorrect, and that he was misadvised as to the minimum penalty he faced if he proceeded to trial." (errors in original)). Let's put aside for a moment the ridiculous notion that Posta's plea decision was in any way influenced by a 0.17-month difference between the minimum sentence he says his lawyer told him about and the lowest permissible sentence he was really facing. Even still, it would make no sense at all for Posta to take to trial a case he was otherwise prepared to plead guilty to *only* because he's discovered that the consequences of the plea were actually *more*—rather than less—favorable to him. *See, e.g., Jackson v. Gordy*, 2019 WL 5068526, at *5 (N.D. Ala. Mar. 7, 2019) (Cornelius, Mag. J.) ("The Sentencing Court

## EVIDENTIARY HEARING

We won't hold an evidentiary hearing in this case. "[W]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Cullen v. Pinholster*, 563 U.S. 170, 183 (2011) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). Based on what we've said—including and especially the presence of a robust state-postconviction record—we don't think we'd benefit from any further factual development here.

## CERTIFICATE OF APPEALABILITY

A Certificate of Appealability ("COA") is appropriate only when the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)). Because jurists of reason wouldn't debate our assessment of Posta's constitutional claim in Ground One—and since reasonable jurists wouldn't second-guess our decision to dismiss the remaining claims on procedural grounds—we **DENY** any request for a COA.

---

overestimated the minimum sentence Petitioner would face if he pled guilty. Petitioner pled guilty nonetheless. . . . It defies logic to suggest Petitioner would not have pled guilty, and instead would have insisted on going to trial, if the Sentencing Court had accurately told him he faced a lower mandatory minimum sentence." (citing *Hill*, 474 U.S. at 59)), *report and recommendation adopted*, 2019 WL 4126781 (N.D. Ala. Aug. 30, 2019) (Haikala, J.), *certificate of appealability denied*, 2020 WL 562411 (11th Cir. Mar. 26, 2020).

\*       \*       \*

Having carefully reviewed the record and the governing law, we hereby **ORDER AND ADJUDGE** that the Petition [ECF No. 1] is **DENIED in part** and **DISMISSED in part**. The first half of Ground One (the "uncounseled conviction" part) is **DENIED** on the merits. The rest of Ground One is **DISMISSED** as *both* unexhausted *and* not cognizable on collateral review. Grounds Two through Five are **DISMISSED** as not cognizable. Any request for a COA is **DENIED**, any request for an evidentiary hearing is **DENIED**, all deadlines are **TERMINATED**, and any pending motions are **DENIED** as moot. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on December 14, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     David John Posta, *pro se*
        counsel of record